Abilene Music Corp., Defendant.

Docket Nos. 98–9609(L), 99–7081(Con)

United States Court of Appeals, Second Circuit.

Argued Jan. 3, 2000

Decided May 22, 2000

Philip MARGO, Mitchell Margo, Jay Siegel, and Henry Medress, Plaintiffs—Appellants,

Stephen J. King and Mitchell J. Stein, Appellants,

v.

George David WEISS, June Peretti, and Luigi Creatore, Defendants— Appellees,

Tab K. Rosenfeld, Stein & Associates, New York, NY, for Plaintiffs–Appellants.

Stephen J. King, pro se, New York, N.Y. (Mitchell A. Stein, pro se, on the brief), for Non–Party Appellants.

David Blasband, Deutsch Klagsbrun & Blasband, New York, NY, for Appellees.

Before: FEINBERG, KEARSE, and SACK, Circuit Judges.

SACK, Circuit Judge:

In a complaint filed May 22, 1996, the plaintiffs Philip Margo, Mitchell Margo, Jay Siegel and Henry Medress, one-time members of a musical group calling itself "The Tokens," sought a declaratory judgment that they are co-authors of, and co-owners of the defendants' copyright in, the song "The Lion Sleeps Tonight." The plaintiffs further alleged that the defendants were liable to them for fraud, breach of fiduciary duty, and various violations of the Lanham Act. The United States District Court for the Southern District of New York (Michael B. Mukasey, *Judge*) granted summary judgment to the defendants, *see Margo v. Weiss*, No. 96 Civ. 3842(MBM), 1998 WL 2558, 1997 U.S. Dist. LEXIS 20867 (S.D.N.Y. Jan. 5, 1998) (*"Margo I"*), and awarded attorneys' fees against the plaintiffs and their legal counsel, Stephen J. King and Mitchell A. Stein, pursuant to Fed.R.Civ.P. 11 and § 505 of the United States Copyright Act of 1976, 17 U.S.C. § 505, *see Margo v. Weiss*, No. 96 Civ. 3842(MBM), 1998 WL 765185, 1998 U.S. Dist. LEXIS 17258 (S.D.N.Y. Nov. 3,

1998) (*"Margo II"*). Plaintiffs and their attorneys appeal.

We affirm the judgment of the district court in all respects.

## BACKGROUND

This litigation has a long, complicated, and decidedly unlyrical history. Because the plaintiffs appeal from the district court's grant of the defendants' motion for summary judgment, we present that history in the light most favorable to the plaintiffs. *See, e.g., Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995).

In 1959 the plaintiffs began performing as a musical group calling itself "The Tokens." The group met with some success, particularly with respect to their performance of a song based on an African lullaby called "Mbube." In 1961 the plaintiffs signed a recording contract with RCA Victor Records ("RCA"). At RCA they began working with Luigi Creatore, Hugo Peretti and George David Weiss (the "Lyricists"), who were experienced record producers and songwriters.[1] In the Fall of 1961, the Lyricists wrote English lyrics to "Mbube," and The Tokens recorded the resulting song under the title "The Lion Sleeps Tonight" (the "Lion"). The Lion became a hit. The Tokens formed a publishing company, Token Music Corp., which was assigned ownership of the publishing rights to the Lion, while the Lyricists retained authors' or songwriters' rights to it. Nearly forty years later, the Lion remains ubiquitous.

Notwithstanding the song's success, events did not proceed harmoniously after the Lyricists completed the lyrics. In 1952 a group called "The Weavers" had recorded a different version of "Mbube" called "Wimoweh." Folkways Music Publishers Co., Inc., ("Folkways") owned the copyright to that song. In October 1961,

---

1. The Defendants–Appellees are the Lyricists except that June Peretti is a Defendant–Appellee in this litigation as a representative of the interests of Hugo Peretti, who died in 1986. *See Margo I*, 1998 WL 2558, at \*1 n. 3, 1997 U.S. Dist. LEXIS 20867, at \*3 n. 3.

Folkways sent a letter to The Tokens alleging that the Lion infringed on Folkways's "Wimoweh" copyright. Believing that RCA would cease to manufacture and distribute recordings of the Lion if Folkways brought a copyright action, and worried that they would then lose the performance royalties and publicity the Lion generated for the group, The Tokens relinquished their copyright in the Lion in favor of Folkways on November 6, 1961. Unbeknownst to the plaintiffs, the Lyricists simultaneously entered into a contract (the "Songwriters Agreement") with Folkways under which they assigned any copyright rights they had in the Lion to Folkways in return for the right to receive songwriters' royalties.

The initial copyright term on the Lion expired in 1989. Folkways and the Lyricists each claimed renewal rights. Pursuant to an arbitration clause in the Songwriters Agreement, an arbitrator decided that all rights to the Lion had reverted to the Lyricists at the end of the initial copyright term. That decision was confirmed by the United States District Court for the Southern District of New York, *see Folkways Music Publishers, Inc. v. Weiss,* No. 90 Civ. 6415(JFK), 1992 WL 230192, 1992 U.S. Dist. LEXIS 13006 (S.D.N.Y. Aug. 31, 1992), and the district court's decision was affirmed by this court, *see Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108 (2d Cir.1993). As noted, it was not until May 1996, three years after the completion of the Folkways litigation and some thirty-five years after the Lion was written, that the plaintiffs filed their complaint in the present action claiming, for the first time, that they were co-authors of the Lion.

The plaintiffs' depositions were taken in January and February 1997. They testified that they had first learned about the dispute between Folkways and the Defendants–Appellees from the public press in 1992, and that in the process they discovered that the defendants had been receiving payments under the Songwriters Contract. The plaintiffs maintain that until

they learned of the dispute over renewal rights they believed that the Lyricists had also given up all of their rights in the Lion in 1961. In fact, the Lyricists had assigned the rights to Folkways in return for the payment of royalties. Prior to learning that the Defendants–Appellees had been receiving royalty payments, the plaintiffs assert, they had no reason to think they had a co-authorship claim against the Defendants–Appellees.

In March 1997, after the depositions had been completed, defendants' counsel suggested that the plaintiffs withdraw their complaint. The plaintiffs' deposition testimony indicated that their cause of action could have accrued no later than 1992 when, they testified, they learned of the dispute between Folkways and the Defendants–Appellees over renewal rights. They brought suit some four years later. Defendants' counsel argued that the action was therefore untimely under *Merchant v. Levy,* 92 F.3d 51 (2d Cir.1996), *cert. denied,* 519 U.S. 1108, 117 S.Ct. 943, 136 L.Ed.2d 833 (1997), which held that the Copyright Act's three-year statute of limitations for civil actions, 17 U.S.C. § 507(b), applies to a suit seeking a declaration of copyright co-ownership rights such as the one sought by the plaintiffs here. *See id.* at 56–57.

When the plaintiffs failed to withdraw their complaint, defendants' counsel, in a March 10, 1997 letter to plaintiffs' counsel, reiterated his suggestion that they do so. The plaintiffs again refused to withdraw their complaint. On April 25, 1997, the defendants filed a Supplemental Motion to Dismiss in which they raised the statute of limitations issue.

In response, on May 30, 1997, the plaintiffs filed an amended complaint. In affidavits accompanying it, each plaintiff claimed to have learned of the Lyricists' agreement with Folkways in late 1994, rather than in 1992 or early 1993 as he had testified in his deposition. Late in July 1997, some five or six months after the depositions had been concluded and more

than three months after the plaintiffs had been served with the defendants' motion papers based on the deposition testimony, the plaintiffs submitted errata sheets for their deposition transcripts. By asserting the existence of more than seventy errors in the transcripts, they sought to change their testimony so as to establish that their discovery of the dispute between Folkways and Defendants–Appellees had occurred less than three years before their initiation of suit. At the same time, they submitted "supplemental answers" to a set of defendants' interrogatories in which one of the plaintiffs changed his interrogatory answers to assert that the plaintiffs had learned of the Songwriters Agreement "in late 1994 or early 1995" rather than "in or about 1993" as he had sworn in his initial interrogatory answers a year before. · If their claim had accrued in late 1994, it would not have been time-barred under *Merchant*. On June 13, 1997, the defendants served but did not file a motion for sanctions under Fed.R.Civ.P. 11, based on the plaintiffs' refusal to withdraw their complaint and their submission of affidavits, errata sheets and interrogatories that contradicted their deposition testimony.

In *Margo I*, filed on January 5, 1998, the district court granted defendants' motion for summary judgment and dismissed the amended complaint. The defendants then moved for counsel fees under § 505 of the Copyright Act and filed the Rule 11 motion that they had served, but not filed, in June of 1997. In reply, the plaintiffs submitted a memorandum of law and a declaration in opposition given by their counsel, Messrs. King and Stein. In *Margo II*, filed on November 3, 1998, the district court granted defendants' Rule 11 and counsel fees motions, awarding the defendants $22,680, $7,680 of which was assessed against the plaintiffs, jointly and severally, pursuant to both Rule 11 and the Copyright Act, and the remaining $15,000 of which was ·assessed against plaintiffs' counsel, jointly and severally, pursuant solely to Rule 11. *See* 1998 WL 765185, at *3, 1998 U.S. Dist. LEXIS 17258, at *10. The court ex-

plained, "The filing of plaintiffs' false affidavits in an effort to forestall dismissal of their claims was objectively unreasonable conduct by both lawyers and clients, and was motivated by a desire to prolong what had become objectively baseless litigation." *Id.,* 1998 WL 765185, at *3, 1998 U.S. Dist. LEXIS 17258, at *8.

The plaintiffs now appeal both on the merits and with respect to the award of counsel fees. Plaintiffs' counsel appeal with particular vigor the imposition of Rule 11 sanctions.

## DISCUSSION

### I. The January 5, 1998 Opinion and Order

■ The plaintiffs nominally appeal from the district court's January 5, 1998 opinion and order, *Margo I,* dismissing their complaint. At oral argument, however, plaintiffs' counsel did not discuss any issues related to the dismissal of the complaint, and no significant issues of law with respect to it are raised by the plaintiffs' briefs. We therefore discuss the merits of the plaintiffs' substantive appeal, about which we are in complete agreement with the district court, with some dispatch.

The plaintiffs sought to be declared co-authors of the Lion. In *Merchant v. Levy,* 92 F.3d 51 (2d Cir.1996), we held that "plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration." *Id.* at 56. The district court held, and we agree, that "*Merchant* controls this case." *Margo I,* 1998 WL 2558, at *5, 1997 U.S. Dist. LEXIS 20867, at *14.

The district court found that the plaintiffs knew or should have known about their claim in 1961, but "[a]t the very least" in 1989. *Id.,* 1998 WL 2558, at *6, 1997 U.S. Dist. LEXIS 20867, at *17–*18. The plaintiffs' deposition testimony indicat-

ed that they may have discovered their claim as late as 1992. Because of the well-settled rule "in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony," *id.*, 1998 WL 2558, at *7, 1997 U.S. Dist. LEXIS 20867, at *19–*20 (quoting *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991)), the district court refused to credit the statements contained in the plaintiffs' affidavits, errata sheets and revised interrogatory answers asserting that they had learned of the Folkways litigation in 1994. If the plaintiffs' claim accrued in 1961, 1989, or even in 1992, it was time-barred under *Merchant*.

■ The plaintiffs' primary argument on appeal is that *Merchant* should not be applied retroactively. This argument is meritless.

> When [a court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule.

*Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995) (reiterating rule stated in *Harper*). In *Harper*, the Court found this principle rooted in "basic norms of constitutional adjudication," 509 U.S. at 97, 113 S.Ct. 2510 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 322, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)), and the lack of "constitutional authority . . . to disregard current law or to treat similarly situated litigants differently," 509 U.S. at 97, 113 S.Ct. 2510 (quoting *American Trucking Assns. v. Smith*, 496 U.S. 167, 214, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990)). As we have said, it is "the 'general rule of long standing' that 'judicial precedents normally have retroactive as well as prospective effect.'" *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239, 240 (2d Cir.1984) (quoting *National Ass'n of Broadcasters v. FCC*, 554 F.2d 1118, 1130 (D.C.Cir.1976)). "Judicial decisions have had retrospective operation for near a thousand years." *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372, 30 S.Ct. 140, 54 L.Ed. 228 (1910) (Holmes, J., dissenting).

*Merchant* held that the plaintiffs were, always would have been, and theretofore would be, time-barred from seeking a declaration of copyright co-ownership rights once the three-year statute of limitations for copyright claims set forth in 17 U.S.C. § 507(b) had run. *See Merchant*, 92 F.3d at 56. In *Merchant* itself, then, the "*Merchant* rule" was applied to facts that occurred, and to a lawsuit that was brought, long before the *Merchant* opinion was issued.[2]

Thus, *Merchant* controls this case. If the plaintiffs' claim accrued before May 22, 1993, three years before the date on which they filed their complaint, then it was barred by the statute of limitations.

■ The plaintiffs' deposition testimony demonstrates that their claim was time-barred. Each plaintiff independently testified to the effect that he knew of the alleged grounds for the group's co-authorship claim prior to May 22, 1993. As the district court correctly held, the plaintiffs cannot defeat a motion for summary judg-

---

**2.** It may be that "in some exceptional cases, courts may shape relief in light of disruption of important reliance interests or the unfairness caused by unexpected judicial decisions." *Reynoldsville Casket Co.*, 514 U.S. at 761–62 (1995) (Kennedy, J., concurring) (describing such cases and endorsing possibility of nonretroactive application of judicial decisions); *see also Harper*, 509 U.S. at 110–12, 113 S.Ct. 2510, 125 L.Ed.2d 74 (Kennedy, J., concurring); *id.* at 113–36, 113 S.Ct. 2510 (O'Connor, J., dissenting). Assuming there are such cases, the retroactive effect of the holding of *Merchant* makes it clear that the case at bar is not one of them.

ment by responding with affidavits recanting that earlier testimony. *See Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969). Nor can they do so by submitting errata sheets long after their depositions were taken,[3] or by filing "supplemental answers" to interrogatories. There is no reason to distinguish, for purposes of the *Perma Research* principle, between an attempt to conjure up a triable issue of fact through the proffer of a late affidavit and an attempt to achieve the same end through the submission of delayed errata sheets or supplemental answers to interrogatories. None will defeat a motion for summary judgment.

Because the plaintiffs did not file their complaint until 1996 but, according to ineffectively contradicted testimony, knew of the grounds for their claims in 1992, their copyright claims were time-barred. The plaintiffs' remaining claims of fraud, breach of fiduciary duty and trademark were resolved by the district court according to well-established legal principles upon which we need not elaborate further here. We therefore affirm the dismissal of those claims for substantially the reasons stated by the district court.

## II. The November 3, 1998 Opinion and Order

Some ten months after ruling on the merits of defendants' motion for summary judgment, the district court issued an opinion and order, *Margo II*, on the defendants' request for costs and attorneys' fees. After reviewing the conduct of the plaintiffs and their attorneys, the court concluded:

Here, the standards of both Rule 11 and the Copyright Act warrant the imposition of an appropriate sanction. The

filing of plaintiffs' false affidavits in an effort to forestall dismissal of their claims was objectively unreasonable conduct by both lawyers and clients, and was motivated by a desire to prolong what had become objectively baseless litigation.

*Margo II,* 1998 WL 765185, at *3, 1998 U.S. Dist. LEXIS 17258, at *8. In his decision, Judge Mukasey roundly condemned plaintiffs' counsel's attempt to avoid the effects of the plaintiffs' deposition testimony by submitting, in response to the defendants' motion for summary judgment relying on that testimony, sworn contradictory statements.

The explanation plaintiffs' counsel offer for this maneuver betrays both counsel's and their clients' improper conduct. The joint declaration of [counsel], submitted under penalty of perjury pursuant to 28 U.S.C. § 1746, reads, in relevant part, as follows:

.... We are merely lawyers. As such, we lack the ability to predict groundbreaking changes in the law that may occur after the filing of suit. [This appears to be a hyperbolic reference to the Second Circuit ruling in *Merchant.*] We also lack the ability to predict that our clients may testify in a manner inconsistent with the facts as presented during the pre-litigation investigation of a claim.

What the joint authors of that paragraph would have me believe is that (i) their pre-litigation investigation of the claim, presumably including conversations with their clients, showed that the plaintiffs did not learn the facts that gave rise to their claim until later than three years before they filed suit, and

---

3. Although the record is not perfectly clear on the point, the errata sheets do not appear to have been timely and may not have been in proper form under Fed.R.Civ.P. 30(e), which provides that

a deponent shall have 30 days after being notified by the officer that the transcript or recording [of his or her deposition] is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them.

We do not rely on Rule 30(e), however, in our disposition of this appeal.

(ii) the four plaintiffs then each independently suffered the same memory lapse and each gave at a separate deposition the same "plainly mistaken" testimony as to the critical date when he learned the operative facts. For me to say I believe that would be to affect a level of naivete about human affairs that is not required even of judges. *Cf., Watts v. Indiana,* 338 U.S. 49, 52, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949) ("And there comes a point where this Court should not be ignorant as judges of what we know as men.") (Plurality Opinion of Frankfurter, J.). Nor can I accept with a straight face the assertion by plaintiffs' counsel that they had reason to believe that the law did or would change to permit parties to amend their deposition testimony in the manner attempted here. *Counsel have cited no case, nor has independent research disclosed any, in which the Second Circuit has signaled its willingness to encourage perjury in civil litigation.*

Plaintiffs' attempt to disavow their deposition testimony was false, and that legally significant falsity was aided and abetted by their lawyers, whose own sanctimonious submission, quoted above, is also false. When parties and lawyers make false statements to their adversaries and to the court that generate costs, there is every reason for them to pay those costs.

*Id.,* 1998 WL 765185, at *2–*3, 1998 U.S. Dist. LEXIS 17258, at *5–*8 (record citations and footnote omitted) (bracketed sentence in district court opinion) (emphasis added).

The plaintiffs' counsel allege that the district court's decision denied them due process, imposed sanctions[4] without an evidentiary hearing or particularized notice, and constituted a *"sua sponte* conviction of plaintiffs and their counsel of [a] serious federal crime[ ]," perjury. We disagree.

### A. Perjury

 Perjury is a crime under 18 U.S.C. § 1623. Counsel were not prosecuted for perjury by anyone; they were not convicted of perjury by the district court. The district court issued a ruling on a motion for sanctions that included harsh language. Counsel's concern about that language does not make sanctions anything more than sanctions.

Appellants are correct that "appellate courts have ruled that, in certain sanctions proceedings, the person facing imposition of sanctions should have the benefit of the procedural protections available to a person charged with a crime." *Mackler Prods., Inc. v. Cohen,* 146 F.3d 126, 128 (2d Cir.1998). But the fact that criminal procedural protections are required in some sanctions proceedings does not support counsel's allegation that they were, in effect, convicted of a crime. Nor were the proceedings in the case at bar of the quasi-criminal variety discussed in *Mackler.* There we held that criminal procedural protections were required because, inter alia, the sanction was (1) explicitly punitive, not compensatory; and (2) payable to the Court, not to the opposing party. *See id.* at 129. The award of fees in this case, by contrast, was meant to compensate the defendants for the extra costs, including legal fees, created by the plaintiffs' unreasonable conduct, and as such the fees were payable to the defendants.

Moreover, Judge Mukasey did not say that the plaintiffs or their counsel committed perjury. What he said was, "[c]ounsel have cited no case, nor has independent research disclosed any, in which the Second Circuit has signaled its willingness to encourage perjury in civil litigation." *Margo II,* 1998 WL 765185, at *2, 1998 U.S. Dist. LEXIS 17258, at *7. This sentence seems to us to refer not to the plaintiffs' testimony or counsel's declara-

---

**4.** As noted, the district court ordered that the defendants recover from plaintiffs' counsel solely pursuant to Rule 11. It is their challenge to this award that the appellants press on appeal.

tion, but to the "assertion by plaintiffs' counsel that they had reason to believe that the law did or would change to permit parties to amend their deposition testimony in the manner attempted here." *Id.* One of the rationales behind the *Perma Research* rule, as Judge Mukasey interpreted it, is that it discourages perjury. Judge Mukasey therefore interpreted counsel's assertion that this Court might be willing to change that rule as an assertion that we might be willing to encourage perjury.

■ To be sure, Judge Mukasey called the plaintiffs' affidavits and counsel's declaration "false." *See id.*, 1998 WL 765185, at *3, 1998 U.S. Dist. LEXIS 17258, at *8. A statement can be false without being uttered with the scienter required to render it perjurious, however. For the plaintiffs' affidavits to be true—i.e., not false, regardless of the scienter with which they were made—one would have to believe that the plaintiffs independently, yet consistently, mistook 1992 and 1993 for 1994 on more than fifty occasions, despite their counsel's warning to "[b]e careful on dates." For counsel's declaration to be true, one would have to believe that they stood by silently while each of the plaintiffs testified in a manner that was not only inconsistent with counsel's pre-litigation investigation, but also devastating to the plaintiffs' claim. There was nothing clearly erroneous about Judge Mukasey's belief that that is not how events transpired, nor about his conclusion that the statements were, therefore, "false." [5]

## B. Due Process

■ Appellants assert that in imposing Rule 11 sanctions the district court violated their due process rights, specifically their right to particularized notice of what they were alleged to have done wrong. "[D]ue process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions." *Ted Lapidus, S.A. v. Vann,* 112 F.3d 91, 96 (2d Cir.1997) (internal quotation marks omitted) (brackets and emphasis in original). In particular, before a lawyer is sanctioned, he or she must receive specific notice of the conduct alleged to be actionable and the standard by which that conduct will be assessed, and he or she must have an opportunity to be heard on that matter. *See Nuwesra v. Merrill Lynch, Fenner and Smith,* 174 F.3d 87, 92 (2d Cir.1999).

Plaintiffs' counsel received ample notice of the specific conduct for which they were sanctioned. Defendants' counsel complained about it throughout the litigation and served the Rule 11 motion that the district court eventually ruled upon on plaintiffs' counsel in June of 1997, along with a Memorandum of Law and an attorney's affidavit. These papers specifically referred to the plaintiffs' changed deposition testimony and indicated that it was grounds for sanctions. The defendants' motion also made clear that *Merchant* governed, that the plaintiffs' co-authorship claims were therefore time-barred, and that their changed testimony was both false and an attempt to avoid summary judgment. Those allegations are precisely what the district court ruled upon in *Margo II.*

In claiming that they did not receive notice of the offenses for which they were sanctioned, appellants apparently fail to distinguish sanctions assessed on motion

---

**5.** Two days after Judge Mukasey's opinion was filed, the NEW YORK LAW JOURNAL reported in part:

A FEDERAL judge on Tuesday slapped two Manhattan lawyers and their clients with $22,680 in sanctions for filing a time-barred claim asserting co-authorship of the hit song, "The Lion Sleeps Tonight," *and then lying to conceal the delay.*

Deborah Pines, *False Affidavit Costs Lawyers $15,000 in Fines,* N.Y.L.J., Nov. 5, 1998, at 1 (emphasis added). The article's possible misreading of the opinion to assert that it charged the lawyers with "lying" is understandable; so is counsel's consternation at having been branded as liars in the trade press.

under Rule 11(c)(1)(A), such as the ones at issue here, from sanctions imposed on the initiative of the court under Rule 11(c)(1)(B). The latter do indeed require that "the court . . . enter an order describing the specific conduct that appears to violate" the rule. Fed.R.Civ.P. 11(c)(1)(B). But the district court was not required to give appellants notice of grounds for sanctions that were clearly expressed in defendants' Rule 11 motion papers.[6] "Appellants . . . had notice from [the defendants'] motion, and an opportunity to be heard by opposing the motion." *International Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1286 (2d Cir.1994).

Plaintiffs' counsel took advantage of the notice they received from the defendants' Rule 11 papers by submitting a "Declaration in Opposition to Defendants' Motion for Counsel Fees, Costs and Disbursements," in which they presented, at length, their version of the events that culminated in the submission of the plaintiffs' contradictory affidavits. They also could have requested an evidentiary hearing but did not ask for one; "the district court had no reason to exercise its discretion to hold an evidentiary hearing that had not been requested." *Id.* at 1286–87. They thus received all the opportunity to respond to the charges against them that due process requires.

*C. Rule 11 Sanctions*

Irrespective of the merits of the plaintiffs' and their counsel's claims as to charges of perjury and incursions on their right to due process, they are entitled to have the district court's award of sanctions against them reviewed in this Court. We do so under an abuse of discretion standard. Such an abuse would include a district court's clearly erroneous assessment of the evidence. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Ame-*

*tex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 108–09 (2d Cir.1998).

Fed.R.Civ.P. 11, which confers on a district court the sanctioning authority exercised in this case, provides in relevant part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,–
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; [and]
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]

Fed.R.Civ.P. 11(b). As we pointed out in *Simon DeBartolo Group v. Richard E. Jacobs Group*, 186 F.3d 157, 166 (2d Cir. 1999), the 1993 Advisory Committee Note explains that Rule 11(b)(2) "establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." Fed. R.Civ.P. 11 advisory committee note to 1993 amendments. "Although arguments for a change of law are not required to be specifically so identified, a contention that is so identified should be viewed with greater tolerance under the rule." *Id.*

Once a court determines that Rule 11(b) has been violated, it may in its discretion impose sanctions limited to what is "sufficient to deter repetition of such conduct." Fed.R.Civ.P. 11(c)(2); *see also* Fed. R.Civ.P. 11 advisory committee note to 1993 amendments. The court may impose,

---

6. Counsel originally claimed not to have received defendants' Rule 11 papers, but admitted that they must have done so when de-

fendants' counsel produced receipts from Federal Express.

among other things, monetary sanctions. *See* Fed.R.Civ.P. 11(c)(2).

The district court correctly stated that the standard for triggering the award of fees under Rule 11 is objective unreasonableness. *See Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1469–70 (2d Cir.1988), *rev'd in part on other grounds*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). It was objectively unreasonable for plaintiffs' counsel to file affidavits, delayed deposition errata sheets and supplemental interrogatory answers in which the plaintiffs contradicted their earlier deposition testimony and interrogatory answers. As the district court observed, there was no basis whatsoever upon which plaintiffs' counsel could argue that this Court might read or change the *Perma Research* rule in a way that rendered it inapplicable to such tactics. The district court acted well within its discretion in granting the defendants reimbursement for a portion of their attorneys' fees to compensate them for the waste of the court's and counsel's time.

### III. Sanctions on Appeal

The defendants have asked for their attorneys' fees on appeal under § 505 of the United States Copyright Act of 1976, 17 U.S.C. § 505. We decline, in our discretion, to award such fees. Because the plaintiffs' half-hearted appeal on the merits is governed by the well-settled law of this Circuit as correctly applied by the district court, however, we award the defendants double costs on the appeal. *See, e.g., Caisse Nationale de Credit Agricole–CNCA v. Valcorp, Inc.*, 28 F.3d 259, 267 (2d Cir.1994).

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court and award double costs on appeal to the defendants.