DISTRICT 6, INTERNATIONAL UN-ION OF INDUSTRIAL, Service, Transport and Health Employees and District 6 Health Fund, Plaintiffs,

v.

NATIONAL MEDIATION BOARD OF THE UNITED STATES OF AMER-ICA; National Labor Relations Board of the United States of America; Dobbs International Services, Inc., d/b/a Gategourmet; Hotel Employees & Restaurant Employees Union, AFL–CIO; and International Brother-hood of Teamsters, AFL–CIO, Defen-dants.

No. 00 CIV. 8711 (DLC).

United States District Court, S.D. New York.

May 2, 2001.

John G. McCarthy, Cynthia M. Heaney, Bainton McCarthy & Siegel, LLC, New York City, for plaintiffs.

Mary Jo White, Nicole L. Gueron, United States Attorney's Office for the Southern District of New York City, for defendant National Mediation Board of the United States of America.

Eric G. Moskowitz, National Labor Relations Board, Washington, DC, for defendant National Labor Relations Board of the United States of America.

Eugene F. Massamillo, Jeanine C. Driscoll, Biederman, Hoenig, Massamillo & Ruff, New York City, for defendant Dobbs International Services, Inc.

John O'B. Clarke, Jr., Highsaw, Mahoney & Clarke, P.C., Washington, DC, for defendants Hotel Employees & Restaurant Employees International Union and International Brotherhood of Teamsters.

## OPINION AND ORDER

COTE, District Judge.

This case grew out of a dispute between unions that seek to represent employees working in the catering industry that serves airlines. The union that lost the right to represent these employees contends that the labor dispute should have been decided by the National Labor Relations Board ("NLRB"), and not the National Mediation Board ("NMB"), which is the federal agency charged with the responsibility for labor-management relations in the rail and air transport industries.

Through an action filed on November 15, 2000, plaintiffs seek a declaratory judgment that the NMB exceeded its statutory authority by asserting jurisdiction over the employer defendant Dobbs International Services, Inc. ("Dobbs").[1] Plaintiffs also seek damages from Dobbs for breaching its collective bargaining agreement with plaintiffs, and unpaid contributions from Dobbs under the collective bargaining agreement pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").

Defendants NMB, Dobbs, Hotel Employees & Restaurant Employees Union, AFL–CIO ("HERE"), International Brotherhood of Teamsters, AFL–CIO ("IBT"), and the NLRB move to dismiss the complaint for lack of subject matter jurisdiction. The NLRB also moves to dismiss the complaint for failure to state a claim. Should the Court determine that there is subject matter jurisdiction over this action, the plaintiffs and NMB have cross-moved for summary judgment.

## BACKGROUND

Plaintiff District 6, International Union of Industrial, Service, Transport and

---

**1.** Dobbs states that its correct name is "Gate    Gourmet Division Americas."

Health Employees ("District 6") is a labor union that represented Dobbs' employees working in Newark, New Jersey from February 1999 until June 2000. Plaintiff District 6 Health Fund is a multiemployer benefit plan established pursuant to ERISA. Defendant Dobbs provides catering services to airlines at airports throughout the United States, including Newark and Kennedy airports in the New York metropolitan area. Defendant NMB is an independent federal agency charged with labor-management relations in the rail and air transport industries under the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("RLA"). Defendant NLRB is an independent federal agency that administers the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* ("NLRA"), and defendants HERE and IBT are labor unions.

In the fall of 1998, District 6 won the majority of votes in an NLRB-sponsored election between District 6 and a local of HERE to determine which union would represent Dobbs' Newark employees. After the NLRB certified District 6 as the collective bargaining representative of Dobbs' Newark employees, District 6 and Dobbs entered into a collective bargaining agreement, effective February 1, 1999 through January 31, 2003.

By letter dated June 8, 1999, Dobbs informed District 6 that on or about July 1, 1999, SAirGroup, would purchase Dobbs. SAirGroup is a holding company based in Zurich, Switzerland, which owns dozens of companies, including airline companies Swissair and Crossair. After SAirGroup acquired Dobbs' stock on or about July 1, 1999, District 6 continued to represent Dobbs' Newark employees.

In May 2000, HERE and IBT formed an "Employee Representatives' Council" ("Council") and filed an application with NMB pursuant to Section 2, Ninth of the RLA, alleging a representation dispute among the Dobbs' kitchen, commissary, catering, and related employees. The Council requested that NMB certify the Council as the representative for all Dobbs' employees nationwide, including Dobbs' Newark employees. On May 31, 2000, District 6 filed charges against Dobbs with Region 22 of the NLRB for unfair labor practices.

On August 17, 2000, the NMB ruled that Dobbs is a "carrier" for purposes of the RLA and that the NMB therefore had jurisdiction to determine which organization should represent Dobbs' employees for collective bargaining purposes.[2] On October 11, 2000, the NMB determined that 93.5 percent of Dobbs' employees had chosen to be represented by a council formed by union locals of HERE and IBT. The NMB certified this council as the representative of all of Dobbs' employees. Plaintiffs filed suit challenging both NMB determinations.

## DISCUSSION

### A. Subject Matter Jurisdiction

Defendants argue that the Court lacks subject matter jurisdiction to review both the NMB's jurisdictional determination and its certification determination. A district court does have jurisdiction to review jurisdictional determinations by the NMB. The Third and Fourth Circuits have found that the NMB's jurisdiction to designate an entity a "carrier" pursuant to the RLA is judicially reviewable. *Delpro Co. v. Brotherhood Ry. Carmen,* 676 F.2d 960,

---

**2.** On September 1, 2000, Region 22 of the NLRB disclaimed jurisdiction over Dobbs, deferring to the NMB's determination that Dobbs was subject to the RLA, and not the NLRA. The NLRB declined to conduct further investigation into District 6's charge of unfair labor practices. District 6 appealed the NLRB's decision to the General Counsel of the NLRB on September 14, 2000. That appeal remains pending.

962 (3d Cir.1982); *International Longshoremen's Ass'n v. North Carolina Ports Auth.*, 463 F.2d 1, 3 (4th Cir.1972). The Fifth Circuit has indicated its agreement with this conclusion. *United States v. Feaster*, 410 F.2d 1354, 1364 (5th Cir. 1969); *see also Railway Labor Executives' Ass'n v. National Mediation Bd.*, 29 F.3d 655, 663–64 (D.C.Cir.1994) (questioning *International Longshoremen's Ass'n v. National Mediation Bd.*, 785 F.2d 1098, 1101 (D.C.Cir.1986) (limiting judicial review to cases where the NMB has decided that it *lacked* jurisdiction over an entity)).

■ A federal court also has jurisdiction to review the NMB's certification determination, but only for a gross violation of the RLA or a violation of the Constitution. *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1249–50 (2d Cir.1992). Representation disputes, "which involve controversies surrounding the designation and authorization of representatives of employees covered under the RLA, are committed to the exclusive jurisdiction of the NMB." *Id.* at 1250 (citation omitted). Because plaintiffs have not alleged any specific statutory or constitutional violation by the NMB there is no jurisdiction in this case over the certification determination. *See also Switchmen's Union v. National Mediation Bd.*, 320 U.S. 297, 300–01, 64 S.Ct. 95, 88 L.Ed. 61 (1943); *Horizon Air Indus., Inc. v. National Mediation Bd.*, 232 F.3d 1126, 1131 (9th Cir.2000).

## B. Summary Judgment

■ Plaintiffs and NMB have made cross-motions for summary judgment on the issue of whether the NMB exceeded its authority in determining that Dobbs was a carrier and subject to the RLA. Plaintiffs first argue that the plain language of the RLA as amended establishes that it was not meant to apply to entities such as Dobbs that are not air carriers. A brief description of the RLA will place this issue in context.

The first two general purposes of the RLA are:

> (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; (2) to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization; . . . .

45 U.S.C. § 151a (1976). To serve each of these goals, the NMB investigates and resolves disputes arising among a carrier's employees as to who represents such employees in labor negotiations. 45 U.S.C. § 152, Ninth. Because the RLA applies only to carriers, any company subject to the NMB's jurisdiction must fall within the definition of "carrier." The original definition, which encompassed only railroads and not airlines, reads in relevant part:

> The term "carrier" *includes* any railroad subject to the jurisdiction of the Surface Transportation Board, any express company that would have been subject to subtitle IV of Title 49, as of December 31, 1995, and *any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which* operates any equipment or facilities or *performs any service* (other than trucking service) *in connection with the transportation,* receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling *of property transported by railroad,* and any receiver, trustee, or other individual or body, judicial or otherwise, when in the possession of the business of any such "carrier": . . . .

45 U.S.C. § 151, First (emphasis supplied).

In 1936, Congress amended the RLA to extend coverage to common carriers by air. The RLA as amended provides:

*All of the provisions* of subchapter I of this chapter, except section 153 of this title [concerning the National Railroad Adjustment Board], *are extended to and shall cover every common carrier by air engaged in interstate or foreign commerce,* and every carrier by air transporting mail for or under contract with the United States Government, and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct the manner of rendition of his service.

45 U.S.C. § 181 (emphasis supplied). Finally, Section 182 explicitly defined "carrier" to include airlines. It provides:

The duties, requirements, penalties, benefits, and privileges prescribed and established by the provisions of subchapter I of this chapter, except section 153 of this title, shall apply to said carriers by air and their employees *in the same manner and to the same extent as though such carriers and their employees were specifically included within the definition of "carrier" and "employee", respectively, in section 151 of this title.*

45 U.S.C. § 182 (emphasis supplied). Reading Sections 151, 181, and 182 together, they establish that the definition of "carrier" applies fully to air carriers. *See, e.g., Air Line Stewards & Stewardesses Ass'n v. Northwest Airlines, Inc.,* 267 F.2d 170, 173 (8th Cir.1959). Since it is undisputed that Dobbs is under common control with an air carrier, Dobbs is also a carrier for purposes of the RLA so long as it performs any service in connection with the transportation of property by air.

This interpretation is consistent with NMB's own analysis of the dispute in this case and of the statute generally. The NMB applied a two-part test to determine that it had jurisdiction in this case:

First, the NMB determines whether the nature of the work is that traditionally performed by employees of rail or air carriers—the "function" test. Second, the NMB determines whether the employer is directly or indirectly owned or controlled by, or under common control with a carrier or carriers—the "control" test. Both parts of this test must be satisfied for the NMB to assert jurisdiction.

*Dobbs Int'l Servs.,* 27 N.M.B. 537, 544–45, 2000 WL 1297903, at *5 (N.M.B. Aug. 17, 2000). Applying this test, the NMB determined that Dobbs' employees perform work traditionally performed by airline industry employees and that Dobbs is under common control with an RLA air carrier. *Dobbs,* 27 N.M.B. at 545. The NMB has consistently used this analysis to determine jurisdiction. *See, e.g., Ogden Aviation Servs.,* 23 N.M.B. 98, 104, 1996 WL 56467, at *4 (N.M.B. Feb. 5, 1996); *Federal Express Corp.,* 23 N.M.B. 32, 75, 1995 WL 700477, at *17 (N.M.B. Nov. 22, 1995). Because the NMB's determination that Dobbs is a carrier is consistent with the statutory requirements and was based on a reasonable interpretation of the RLA, the decision will not be overturned. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Sutherland v. Reno,* 228 F.3d 171, 173–74 (2d Cir.2000); *Michel v. Immigration and Naturalization Serv.,* 206 F.3d 253, 262–63 (2d Cir. 2000).

Plaintiffs next contend that the RLA is not applicable to catering companies. The RLA, however, applies quite broadly to "every air pilot or other person *who performs any work as an employee* or subordinate official" of an air carrier. 45 U.S.C. § 181 (emphasis supplied). Moreover, the NMB has repeatedly found the RLA applicable to in-flight caterers. *See,*

e.g., *LSG Sky Chefs, Inc.*, 27 N.M.B. 55, 62, 1999 WL 962814, at *4 (N.M.B. Oct. 19, 1999); *America West Airlines, Inc.*, 22 N.M.B. 54, 65–66, 1994 WL 656911, at *6 (N.M.B. Nov. 14, 1994); *Nikko Inflight Catering Co.*, 19 N.M.B. 434, 436, 1992 WL 509792, at *2 (N.M.B. Aug. 13, 1992). In each of these decisions, the NMB found that in-flight food caterers such as Dobbs performed work traditionally performed by employees of air carriers and were covered by the RLA.

It is irrelevant that the daily operations of Dobbs and its employees has not changed since SAirGroup's acquisition of Dobbs. Under the RLA the daily functions of a non-carrier's employees are relevant only to the determination of whether such functions are traditionally performed by employees in air transportation. *See* 45 U.S.C. § 151, First. It is similarly unnecessary to decide whether a food catering company can have an effect on airline strikes.[3]. Although one of the purposes of the RLA was to prevent interruption to air commerce, *see* 45 U.S.C. § 151a, the existence of this potential effect is not a prerequisite to a finding that an entity is a carrier for purposes of the RLA. In sum, plaintiffs have not shown why the RLA should not apply to Dobbs.

### C.  Remaining Motions

To the extent that the plaintiffs seek a declaration that the NLRB, not the NMB, has jurisdiction over Dobbs, that request is denied, and the NLRB's motion to dismiss is granted. Plaintiffs concede that if the RLA applies to this dispute, their ERISA claim is barred by the RLA and the NMB's certification of the Council. Plaintiffs' ERISA claim is dismissed.

Dobbs moves for sanctions against plaintiffs pursuant to Rule 11, Fed.R.Civ. P., and 28 U.S.C. § 1927, for filing a frivolous action. Dobbs contends that sanctions are appropriate because a reasonable inquiry into the facts and law would have revealed that plaintiffs' claims lacked an adequate legal and factual foundation. While certain arguments by plaintiffs were contrary to clear legal precedent, the Court cannot conclude that it was "objectively unreasonable" for plaintiffs to argue that Dobbs was not subject to the RLA. *Margo v. Weiss*, 213 F.3d 55, 64–65 (2d Cir.2000). Nor can the Court conclude that plaintiffs' claims were "so completely without merit ... that they must have been undertaken for some improper purpose such as delay." *Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir.2000).

### CONCLUSION

For the reasons stated, defendants' motions to dismiss are granted in part and denied in part. NMB's cross-motion for summary judgment is granted. Dobbs' motion for sanctions is denied. The Clerk of Court shall enter judgment for the defendants and close the case.

SO ORDERED:

---

**3.**  Plaintiffs cite *Dobbs Houses, Inc. v. National Labor Relations Bd.*, 443 F.2d 1066, 1070 (6th Cir.1971), for the proposition that food catering companies can have no potential effect on airline strikes. *Dobbs* is inapposite, however, because Dobbs was not at that time controlled directly or indirectly by an air carrier, and the court held that it was therefore not a carrier for purposes of the RLA. *Id.* at 1072.