Timothy LONGO and Karen Longo, Individually and as Parents and Natural Guardians of Infants Zachary Longo and Joshua Longo, Plaintiffs,

v.

IMPERIAL TOY CORPORATION, Defendant–Third Party Plaintiff,

v.

Sohni–Wicke GmbH; Sohni–Wicke Amorces–Und Spielwaren GmbH; and Sohni–Wicke Amorces–Und Spielwaren GmbH, Third Party Defendants.

No. 1:01–CV–657.

United States District Court, N.D. New York.

Feb. 5, 2004.

James E. Long, Esq., Albany, NY, for Plaintiffs.

Maynard, O'Connor, Smith & Catalinotto, LLP, Attorneys for Defendant–Third

Party Plaintiff, Albany, NY, Christopher K.H. Dressler, Esq., Michael T. Snyder, Esq., of counsel.

Biedermann, Hoenig, Massimillo & Ruff, Attorneys for Third Party Defendants, New York, NY, Leslie R. Ruff, Esq., of counsel.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

### I. INTRODUCTION

Plaintiffs Timothy ("Mr. Longo") and Karen Longo ("Mrs. Longo"), individually and as the parents and natural guardians of infant-plaintiffs Zachary ("Zachary") and Joshua ("Joshua") Longo (collectively, "Longos"), brought suit against defendant Imperial Toy Corporation ("Imperial"), alleging negligent failure to warn, strict products liability, breach of implied warranty of merchantability, and breach of implied warranty of fitness, in connection with an incident involving a product allegedly manufactured by Imperial.[1]

Imperial has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiffs opposed. Oral argument was heard on October 24, 2003, in Albany, New York. Decision was reserved.

### II. FACTS

In the fall of 1990, Mrs. Longo went to a store named Caldor's and purchased for her then five-year old son Joshua a toy gun and packages of toy gun caps. Joshua removed the caps from the packages and placed them in a sandwich bag. Neither Mrs. Longo nor her husband saw from which package Joshua removed the caps. Joshua is unsure which brand or brands of caps he emptied into the sandwich bag.

---

1. In November 2001, Imperial commenced a third-party action, alleging that the product named in the complaint was actually designed, manufactured, and packaged by Soh- ni–Wicke GmbH, Sohni–Wicke Amorces–Und Spielwaren GmbH, and Sohni–Wicke Amorces–Und Spielwaren Fabrik GmbH.

The sandwich bag was kept in a screened-in front porch that was attached to the family home.

On March 21, 1991, Zachary, then just over a year old, retrieved the sandwich bag of caps from the porch, and sat down on the love seat occupied by Mrs. Longo and her third child, an infant. After Mrs. Longo admonished Zachary for retrieving the sandwich bag, he spilled the caps contained therein. She called for Joshua to pick up the caps and place them back into the sandwich bag. Joshua, cupping his hands, attempted to push the caps into a pile. The caps then "exploded," or "blew up," (Docket No. 30, Ex. J, p. 5; Docket No. 30, Ex. K, p. 22), burning Joshua's hand and causing Zachary's pajamas to catch on fire. After quelling the flames from Zachary's pajamas and administering some rudimentary treatment to Joshua's burned hand, Mrs. Longo borrowed her sister's car to take Joshua to get medical treatment.

Mr. Longo was not home during these events. When Mrs. Longo returned home with Joshua later that evening, she explained to her husband what had happened and showed him the toy gun and the sandwich bag of caps.

At the suggestion of a friend, Mr. and Mrs. Longo contacted Paul DeLorenzo ("DeLorenzo"), Esq. After an initial meeting with DeLorenzo, Mr. Longo brought him Zachary's pajamas, as well as the blanket he had been holding at the time of the accident, some photographs, the toy gun, and the sandwich bag of caps.

Subsequently, he brought DeLorenzo an unopened package of caps bearing Imperial's name. At her August 28, 2002, deposition, Mrs. Longo testified that the only caps remaining after the accident were the ones already in the sandwich bag. (Docket No. 30, Ex. K, pp. 37–38.) However, by affidavit dated September 1, 2003, submitted in opposition to Imperial's summary judgment motion, she claimed that she was "a little confused" at her deposition, and that the unopened Imperial caps were the type she purchased at Caldor's and that Mr. Longo brought to DeLorenzo's office. (Docket No. 33, Aff. of Karen Longo, ¶ 11.)

DeLorenzo also had in his possession a package of unopened caps bearing the name of Edison Toys of U.S.A., Inc. ("Edison"). Mr. Longo contends, however, that he did not bring the Edison caps to DeLorenzo, and that the attorney instead "may have bought them on [his] own or [as a] result of a news report on WRGB that used th[is] type of caps to conduct experiments." (Docket No. 33, Aff. of Timothy Longo, ¶ 9.) DeLorenzo denies purchasing the caps or having any contact with media representatives, and claims that all caps in his possession were brought to him by the Longos.

On August 23, 1993, DeLorenzo filed suit on behalf of Mr. and Mrs. Longo, Zachary, and Joshua in New York State Supreme Court, alleging that Edison and Caldor, Inc. were responsible for the boys' injuries, as the manufacturer and seller of the injury-causing caps. In 1995, Caldor, Inc. filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York. The Longos' case against Edison and Caldor, Inc. languished until June 2001, nearly *eight* years after it was filed, at which time their new counsel, upon discovering Caldor, Inc.'s bankruptcy and that Edison was allegedly not the manufacturer of the injury-causing caps, discontinued the state court action. This lawsuit, in which the Longos claim Imperial was the manufacturer of the injury-causing caps, followed.

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affida-

vits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 436 (2d Cir.1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Richardson*, 180 F.3d at 436; *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

### B. *The Longos' Claims*

■ The parties agree that the issue at bar in the pending summary judgment motion is whether the Longos have adduced sufficient evidence to identify Imperial's toy gun caps as the product that allegedly caused Zachary's and Joshua's injuries. The Longos "must establish by competent proof that it was [Imperial] [which] manufactured and placed in the stream of commerce the [allegedly] injury-causing defective product." *Healey v. Firestone Tire & Rubber Co.*, 87 N.Y.2d 596, 601, 640 N.Y.S.2d 860, 663 N.E.2d 901 (1996). While circumstantial evidence may be considered competent proof, such evidence must at least demonstrate "that it is reasonably probable, not merely possible or evenly balanced, that the defendant was the source of the offending product. Speculative or conjectural evidence of the manufacturer's identity is not enough." *Id.* at 601–02, 640 N.Y.S.2d 860, 663 N.E.2d 901 (citations omitted). The Longos cannot satisfy their burden.

Local Rule 7.1(a)(3) required Imperial, as the moving party, to submit a statement of material facts, which it did. However, it also required the Longos to submit a response "mirror[ing] [Imperial's] Statement of Material Facts by admitting and/or denying each of [Imperial's] assertions in matching numbered paragraphs," which they did not do. Instead, inserted into their memorandum of law in opposition to Imperial's summary judgment motion is a section entitled, "Statement of Facts Pursuant to Fed. Rules Civ Pro § 56 & Local Rule 7.1(F)." (Docket No. 34, pp. 3–4.) In this section, neither matching enumerated paragraphs nor explicit admissions or denials are present. The Longos do state that "[b]y circumstantial evidence [they] can establish that the toy that caused injury to the infant[s] ... was that of ... Imperial ... and as such a material issue of fact remains for the trier of fact to determine," but no record citation accompanies this claim. *Id.* at 4. Perhaps more importantly, they do not specifically deny any of the following facts, all of which were asserted by Imperial in its statement of material facts: (1) "Infant plaintiff Joshua Longo does not remember from what package the caps in his sandwich bag came," (Docket No. 31, ¶ 13); (2) "Infant Joshua Longo does not remember whether

the caps in his sandwich bag were all the same brand or different brands," *id.* at ¶ 14; (3) "Plaintiff Timothy Longo did not see the package from which the caps in the sandwich bag came," *id.* at ¶ 17; (4) "Plaintiff Karen Longo does not remember what the package of caps she purchased look like," *id.* at ¶ 20; and (5) "Plaintiffs are unable to identify what caps were in the sandwich bag and what caps caused the infant plaintiff's injuries," *id.* at ¶ 21. Because the Longos failed to specifically admit or deny these asserted facts in like-numbered paragraphs, Local Rule 7.1(a)(3) contemplates that they are "deemed admitted."

■ Even setting aside the local rules, the facts asserted by Imperial find support in the transcripts of the depositions it submitted in support of its motion for summary judgment. Joshua filled the sandwich bag with caps from the packages that Mrs. Longo bought. Neither Joshua, Mrs. Longo, nor Mr. Longo, remember which packages were used to fill the sandwich bag. Mr. and Mrs. Longo do not remember seeing Joshua empty caps into the sandwich bag. These facts alone would suffice to demonstrate that the Longos have not shown that it was reasonably probable that the caps in the sandwich bag were those manufactured by Imperial. The only thing that could possibly impact this conclusion is if Mrs. Longo was able to testify definitively that she bought only one type of caps from the store. She did not do so at her deposition. Thus, it would be improper from the deposition testimony to infer that all of the caps in the sandwich bag were caps manufactured by Imperial.

■ The only substantive denial, expressly or by implication, of these asserted facts comes from Mrs. Longo's affidavit submitted in opposition to Imperial's motion for summary judgment. As noted, in her affidavit, Mrs. Longo claims that she was confused at the deposition, and that she now believes, over a year after her deposition and over a decade since the accident, that it was Imperial caps which caused the injuries. However, Mrs. Longo cannot now be permitted to use an affidavit—submitted in opposition to a motion which, if successful, would result in the dismissal of her claim—contrary to her deposition testimony to create a triable issue of fact. *Margo v. Weiss,* 213 F.3d 55, 60–61 (2d Cir.2000) ("[T]he plaintiffs cannot defeat a motion for summary judgment by responding with affidavits recanting ... earlier [deposition] testimony") (citing *Perma Research & Development Co. v. Singer,* 410 F.2d 572, 578 (2nd Cir. 1969)). As noted, her earlier deposition testimony is supported by assertions made by other family members in depositions. Also, though she claims in the affidavit that the unopened package of Edison caps was never delivered to DeLorenzo's office, she does not expressly claim that she never purchased Edison caps. The Longos have failed to carry their burden to demonstrate that it was reasonably probable that the caps in the sandwich bag were manufactured by Imperial.

## IV. CONCLUSION

Accepting the evidence most favorable to plaintiffs, there is not even sufficient circumstantial evidence to create a genuine issue of fact for a jury. At this point in time, it would be pure speculation and quesswork for a jury to attempt to determine the manufacturer or manufacturers of the caps which caused the injuries to the two boys.[2] The complaint must be dismissed.

---

2. This conclusion is not reached without sympathy for the Longos. If the incident occurred as they allege, it seems a travesty that

relief is unavailable. The blame for the incident, assuming the caps were defective and there are no supportable defenses, surely lies

Accordingly, it is

ORDERED that

1. Defendant Imperial Toy Corporation's motion for summary judgment is GRANTED; and

2. The complaint is DISMISSED.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

ultimately with the manufacturer. The blame for the travesty, however, is another matter. Mr. and Mrs. Longo, much less Joshua, who was five years old at the time of the accident, cannot now be expected to recall with the precision necessary in court the details of events which occurred over a decade ago.

The blame for the travesty, therefore, would appear to lie with the Longos' prior attorney, DeLorenzo. He should have pinned down all of the important details at that time, with receipts, photos, and statements or affidavits from the Longos. Sufficient evidence could have been secured to identify the manufacturer of the injury causing caps. If in doubt, suit could have been commenced in the alternative against more than one manufacturer. It is shocking that he permitted the state court case, which involved two injured Infant plaintiffs, to be inert for a period of nearly *eight* years. Regardless of which company was responsible for manufacturing the injury-producing caps, the caps were purchased at Caldor's, so it is nothing short of bad lawyering that DeLorenzo failed to pursue the matter with Caldor's, an insurance carrier, or in the bankruptcy action. In fact, the issues in the accident of March 21, 1993, involving infants Joshua and Zachary, with good lawyering, should have been resolved by trial or settlement before Caldor's bankruptcy in 1995. Indeed, on the facts alleged, DeLorenzo's conduct appears to be a tutorial on precisely how to not serve a client well.