**Vince McLEOD, Petitioner,**

v.

**VERIZON NEW YORK, INC., Respondent.**

**No. 13–CV–1751 (ADS)(AKT).**

United States District Court, E.D. New York.

Feb. 1, 2014.

The Law Office of Rene Myatt, By: Rene Myatt, Esq., of Counsel, Hollis, NY, for the Petitioner.

Seyfarth Shaw LLP, By: Howard M. Wexler, Esq., of Counsel, New York, NY, for the Respondent.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On or about March 10, 2013, the Petitioner Vince McLeod (the "Petitioner") filed a Petition in the Supreme Court of the State of New York, County of Nassau against the Respondent Verizon New York, Inc. ("Verizon" or the "Respondent"), pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"). The Petitioner asserted (1) that he had been wrongfully terminated from his employment with the Respondent and (2) that his union breached its duty of fair representation and violated his Fourteenth Amendment rights to due process by failing to properly handle his employment grievance against the Respondent.

Subsequently, on April 2, 2013, the Respondent removed the action, uncontested, to this Court pursuant to 28 U.S.C. §§ 1331 and 1441. In this regard, the Respondent asserted that the Petitioner's employment with the Respondent was controlled by a collective bargaining agreement (the "CBA") between the Respondent and the Petitioner's union, Communications Workers of America ("CWA" or the "Union"). As such, according to the Respondent, the Petitioner's claims were completely preempted by the Labor Management Relations Act, 1947, 29 U.S.C. § 185(a) ("LMRA § 301"), and thus arose under federal law.

Presently before the Court is the Respondent's Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6) motion to dismiss the Petitioner's action. The Respondent also asks for sanctions pursuant to Fed.R.Civ.P. 11. For the reasons that follow, the Court grants the Respondent's motion and dismisses this case, but denies the Respondent's application for Rule 11 sanctions.

## I. BACKGROUND

Unless otherwise noted, the following facts are derived from the Petition and are construed in a light most favorable to the Petitioner.

### A. Underlying Facts

The Respondent is a corporate entity that provides communication services. For approximately twelve years, the Petitioner was employed by the Respondent as a field service technician. The Petition does not offer any additional details with respect to the Respondent's business or as to the Petitioner's duties and responsibilities as a field service technician.

On a date unspecified in the Petition, one of the Respondent's customer complained that he had been improperly charged for downloading eleven movies which he claimed he had not downloaded. The movies were downloaded during an approximately nine month period, from May 2010 through January 2011. The Respondent investigated the customer's complaint and discovered that the movies in question had been ordered through a serial numbered cable box that the Respondent had removed from the customer's home in 2007.

The Petitioner maintained an old operable cable box for use as a test device. At some point, again on a date unspecified in the Petition, the Petitioner produced this box to the Respondent for inspection. According to the Petition, his box was not the one used to download the movies. Nevertheless, the Respondent fired the Petitioner.

The Petitioner denies having downloaded the movies. He alleges that after 2007, with respect to the cable box he had removed from the customer's home, there was no record of a chain of custody and the box was never recovered. He further maintains that there was no credible evidence that he downloaded any of the movies or that he was even in possession of the cable box that was used to download the movies. As such, he claims that he was wrongfully terminated by the Respondent.

■ In addition, although the Petition is not especially clear, it appears that the Petitioner tried to involve the Union in challenging his termination. However, the Petition suggests that the Union declined to proceed further with the Petitioner's case after he was terminated. Specifically, on March 9, 2012, the Union sent the Petitioner a letter, which stated as follows:

This letter is to advise you, that Verizon has denied your grievance, and that the National Union has elected not to proceed further with your case.

Enclosed is a copy of the appeal procedure from the CWA Constitution. Should you choose to appeal your grievance, please do so by March 26, 2012. All appeals should be in writing and mailed to CWA Downstate Area Director, Elisa Riordan at CWA District 1, 80 Pine Street, 37th Floor, New York, NY 10005. Please mail a copy to me as well. Please note: appeals sent by email will not be accepted.

(Wexler Decl., Exh. B.) While this letter was not included in the Petition, because the Petition specifically quotes to it, the Court finds that it was incorporated by reference and thus, the Court may consider it. *See Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir.1993) (holding that in its analysis, a court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in [the] plaintiff['s] possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit").

■ Further, the Court considers the CBA, even though the Petitioner also neglected to attach this document to his Petition. This is because "the collective bargaining agreement [ ] governed [the Petitioner's] employment relationship with [the Respondent]" and "[the Petitioner] relied on these documents in bringing suit, and there is no dispute about their relevance or veracity, or that [the Petitioner] knew about and possessed them when he brought this suit." *Washington v. Garage Management Corp.*, No. 11 Civ. 3420(CM), 2012 WL 4336163, at *2 (S.D.N.Y. Sept. 20, 2012); *see also Severin v. Project OHR, Inc.*, No. 10 Civ. 9696(DLC), 2011 WL 3902994, at *1 n. 1 (S.D.N.Y. Sept. 2, 2011).

In the CBA, Article 11 outlines the grievance procedure. In this regard, Article 11.01 states "that neither [Verizon], its representatives and supervisors, nor the Union, its locals, representatives and the employees it represents, will attempt to bring about the settlement of any issue by means other than the grievance provisions and, where applicable, the arbitration provision of this Agreement." (Wexler Decl., Exh. C.) The grievance procedure involves a three-step process. In the event the grievance is not satisfactorily resolved by the completion of the grievance procedure set forth in Article 11, the CBA provides that the Union or the Company may arbitrate the grievance under Article 12. According to the CBA, "[t]he decision of the Arbitrator shall be final and binding upon the parties and [Verizon] and [the] Union agree to abide thereby." (Wexler Decl., Exh. C.)

However, with respect to cases where an employee is discharged, as the Petitioner

was here, Article 10 of the CBA stipulates that "[n]o arbitrator shall have power or jurisdiction to modify [Verizon's] action." (Wexler Decl., Exh. C.) Rather, "[t]he Arbitrator shall either find that [Verizon's] action was not without just cause, in which event the ... discharge shall be sustained in full; or that the ... discharge was without just cause, in which event the treatment of the case shall be as set forth in Section 10.03 of [ ] Article [10]," which involves the procedure for reinstating an employee who had been previously discharged. (Wexler, Decl., Exh. C.)

According to the Petition, by declining to proceed further with the Petitioner's case, the Union violated the Petitioner's due process rights under the Fourteenth Amendment. The Petitioner appears to claim that the Union's letter waived his right to a post-termination hearing and that he "should have been able to obtain a post-termination hearing if he requested one promptly upon receipt of notification from the Union that it was not pursuing the grievance." (Pet., ¶ 14.) However, nowhere in his Petition does the Petitioner allege that he attempted to obtain a post-termination hearing subsequent to receiving the March 9, 2012 letter, nor does he address the language in this letter which directs him to appeal his grievance by March 26, 2012.

In his opposition papers, the Petitioner admits that "[t]hroughout the entire grievance process[,] [he] deferred to the local union representative who handled everything" and "allow[ed] the local union to take the lead on securing his job and thus remained passive following the local union's lead." (Opp., pg. 7.) Despite receiving the March 9, 2012 letter from the Union, he maintains that he "was not aware that the local union representative had not filed an appeal on his behalf and had otherwise not grieved his termination" and that he was "under the impression

that the local union had exhausted all of his remedies[.]" (Opp., pg. 7.) None of these factual assertions appear in his Petition.

### B. Procedural History

As indicated above, the Petitioner commenced this action on March 10, 2013, in the Supreme Court of the State of New York, County of Nassau. This was more than one year after he received the March 9, 2012 letter from the Union advising him that the Union would not be proceeding with his case and informing him how and when he should appeal his grievance. The Petitioner did not name the Union as a Respondent, but rather, only named Verizon.

▮▮▮▮ As also stated above, on April 2, 2013, this action was removed to this Court by the Respondent on the ground that the Petitioner's claims were completely preempted by LMRA § 301 and thus arose under federal law. In this regard, "[LMRA § ] 301 represents both a jurisdictional grant to the federal courts as well as a source of substantive law. It dictates 'complete preemption,' or the total occupation of a field by federal law, where a state claim implicates the 'interpretation of collective-bargaining agreements[.]'" *London v. Sikorsky Aircraft Corp.*, 472 F.Supp.2d 194, 197 (D.Conn.2007) (quoting *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 409–10, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)) (original brackets omitted). Consequently,

[a]lthough the general rule is that removal is not permitted simply because a defendant intends to defend the case on the basis of federal preemption, there is an exception for state law claims that are completely preempted by federal law, meaning that any claim based on preempted state law is considered a federal claim arising under federal law.

Section 301 of the LMRA has this unusual preemptive power. *Fenn v. Verizon Communications, Inc.,* No. 08 Civ. 2348(PGG), 2010 WL 908918, at *5 (S.D.N.Y. Mar. 15, 2010) (citations and internal quotation marks omitted).

 In the Petition, the Petitioner challenges the termination of his employment by the Respondent for being without just cause and alleges his Union failed to adequately represent him during the grievance process. To resolve both of these claims will require the interpretation of the governing CBA. *See id.* at *5–6; *Salamea v. Macy's East, Inc.,* 426 F.Supp.2d 149, 154 (S.D.N.Y.2006) (holding that an employee's purported state law claim of negligence was preempted by LMRA § 301, because "an at will employee [ ] could be terminated for any reason or no reason at all," any duty owed to the employee by the employer "arose from the CBA's requirement that an employee not be terminated without just cause"). Accordingly, the Court agrees with the Respondent that the Petitioner's claims are completely preempted by federal law and finds that the Respondent's removal of this action to this Court was proper.

On May 6, 2013, after filing the notice of removal, the Respondent moved to dismiss the Petitioner's case pursuant to Fed.R.Civ.P. 12(b)(6), which motion is presently before the Court. The Respondent argues that the Petitioner's wrongful termination claim must fail, because (1) New York does not generally recognize wrongful termination claims; and (2) the Petitioner was required to challenge his termination using the grievance and arbitration procedures provided under the CBA, but failed to do so. In addition, the Respondent contends that to the extent the Petitioner is bringing a hybrid suit under LMRA § 301 on the ground that the Union did not fairly represent him, such a claim is time-barred. Lastly, the Respon-

dent asserts that the Petitioner has no constitutional claim, since a private employer, like the Respondent, is not subject to the procedural due process requirements of the Fourteenth Amendment.

The Petitioner has opposed the Respondent's motion. However, the Petitioner appears to abandon both his wrongful termination and constitutional claims. Rather, he concedes that his Petition alleges a hybrid suit under LMRA § 301, which consists of the following two causes of action: (1) the Respondent breached the CBA and (2) the Union breached its duty of fair representation.

The Respondent submitted a reply to the Petitioner's opposition. In its reply, the Respondent requests that the Court impose Fed.R.Civ.P. 11 sanctions, arguing that this action is frivolous and that the Respondent is entitled to an award of attorneys' fees.

## II. DISCUSSION

### A. *Legal Standard on a Fed.R.Civ.P. 12(b)(6) Motion to Dismiss*

It is well-established that a complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In this regard, when deciding a motion to dismiss, a court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *In re NYSE Specialists Secs. Litig.,* 503 F.3d 89, 91 (2d Cir. 2007).

As such, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. However, "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

**B. As to Whether the Petitioner's LMRA § 301 Hybrid Suit is Time–Barred**

■ As the Petitioner concedes that he is bringing an LMRA § 301 hybrid suit and frames his claim as such in his opposition, the Court shall analyze the Petition and the Respondent's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) under this framework. As an initial matter, the Court notes that "[i]n a hybrid Section 301/duty of fair representation claim, the plaintiff can choose to name both the employer and the union as defendants, or only one of the two." *Smith v. Continental AFA*, 562 F.Supp.2d 283, 290 (D.Conn. 2008) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)). Therefore, the Petitioner is entitled to proceed with his LMRA § 301 claim against the Respondent although he has not also named the Union as a defendant in this action.

■ "In general, before an employee may sue her employer for breaching a CBA, that 'employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement.'" *Doyle v. United Airlines, Inc.*, 914 F.Supp.2d 325, 338 (E.D.N.Y.2012) (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. at 164,

103 S.Ct. 2281). However, "a wrongfully discharged employee may bring an action against [his] employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). "To properly plead such a claim," which is commonly referred to as a hybrid LMRA § 301 suit, "[an] employee must allege both '(1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer.'" *Id.* (quoting *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 113 (2d Cir.1997)); *see also Rosario v. Local 1106 Transport Works of America*, No. 13–CV–400 (PKC), 2014 WL 297246, at *3 (E.D.N.Y. Jan. 27, 2014) ("[T]o establish a 'hybrid' § 301 claim, 'a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members.'") (citations omitted).

■ "[T]he appropriate statute of limitations for 'hybrid' actions, i.e., cases involving both claims against the employer under Section 301 and claims against the union for breach of the duty of fair representation, is six months." *Civardi v. General Dynamics Corp.*, 603 F.Supp.2d 393, 397 (D.Conn.2009) (citing *DelCostello*, 462 U.S. at 163–71, 103 S.Ct. 2281). "The six-month clock begins to run from 'the time when the union member knew or reasonably should have known that a breach of the duty of fair representation had occurred.'" *Rosario*, 2014 WL 297246, at *4 (quoting *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 55 (2d Cir.2003)). *See also Doyle,*

914 F.Supp.2d at 338 (noting that an employee bringing a LMRA § 301 hybrid claim must do so within six months from "when [he] knew or should have known of the breach of the duty of fair representation") (citing *White Rose*, 128 F.3d at 113); *Antongorgi v. Bovena*, No. 06–CV–5777 (DLI)(LB), 2007 WL 2126096, at *2 (E.D.N.Y. July 24, 2007) ("The statute of limitations for hybrid causes of actions brought under Section 301 of the LMRA is six months from the time when the employee knew, or should have reasonably known, that such a breach occurred.") (citing *DelCostello*, 462 U.S. at 171, 103 S.Ct. 2281).

In this case, the statute of limitations began to run when the Petitioner received the Union's letter dated March 9, 2012. This letter clearly advised the Petitioner that the Union was no longer going to proceed with his case. With the letter, the Union also provided the Petitioner with a copy of the appeal procedure from the Union's Constitution and informed him that if he chose to appeal his grievance, he was required to do so by March 26, 2012. Nevertheless, the Petitioner apparently took no action. Despite the Petitioner's claim that he continued to believe that his Union was proceeding forward with his case, the Court finds that the Petitioner should have reasonably known that his Union potentially breached its duty of fair representation upon his receipt of the March 9, 2012 letter.

"Where ... a plaintiff alleging a hybrid LMRA § 301 claim has not set forth any viable equitable reason for tolling a statute of limitations, courts in this circuit have dismissed such claims for untimeliness." *Doyle*, 914 F.Supp.2d at 339 (collecting cases). Accordingly, since the Petitioner commenced this action on March 10, 2013, more than one year after receiving the March 9, 2012 letter, his hybrid claim is time-barred and must be dismissed with prejudice. *See, e.g., Rosario*, 2014 WL 297246, at *6 ("[T]his Court dismisses with prejudice [the] [p]laintiff's Hybrid § 301 LMRA claim against both [the employer and the union] based on the applicable six-month statute of limitations."); *Civardi*, 603 F.Supp.2d at 399 (holding that "the plaintiff's preempted claims against [the defendants] are time-barred and should be dismissed" where the plaintiff had commenced the action after "[t]he six-month limitations period had expired").

### C. As to the Petitioner's Constitutional Claim

In his Petition, the Petitioner also appears to raise a constitutional claim that he was deprived of his procedural due process rights under the Fourteenth Amendment. The Respondent moved to dismiss any such claim on the ground that, in contrast with a public employer, an employee employed by a private employer is not entitled to procedural due process and may be fired at-will. The Petitioner did not address the Respondent's arguments in his opposition papers, and thus the Respondent argues that the Petitioner's constitutional claim should be considered abandoned. The Court agrees.

Indeed, courts in this circuit have held that "[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims." *Youmans v. Schriro*, No. 12 Civ. 3690(PAE)(JCF), 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013) (collecting cases); *see also, In re Adelphia Communications Corp. Securities and Derivative Litigation*, No. 03 MDL 1529(JMF), 2013 WL 6838899, at *13 (S.D.N.Y. Dec. 27, 2013) ("[The] [p]laintiffs did not respond to [the defendant's] arguments with respect to their indemnity claim in their memorandum of law in oppo-

sition to the motion to dismiss. Thus, the indemnity claim is deemed abandoned and dismissed on that basis."); *Reid v. Ingerman Smith LLP*, 876 F.Supp.2d 176, 186 (E.D.N.Y.2012) ("[The plaintiff] does not address [the defendant's argument as to why her aiding and abetting claim should be dismissed] in her opposition brief. The Court thus deems the claim against [the plaintiff] abandoned, and the motion to dismiss it is granted.").

 In any event, even if the Petitioner had not abandoned his procedural due process claim, it could still not survive the Respondent's Rule 12(b)(6) motion to dismiss, because "private at will employers generally are under no obligation to provide employees with either a hearing or any other procedural rights prior to termination." *Drake v. Delta Air Lines, Inc.*, No. 94–CV–5944 (FB), 1997 WL 397498, at *3 (E.D.N.Y. July 10, 1997), *aff'g, and vacating on other grounds*, 147 F.3d 169 (2d Cir.1998) ("We affirm, substantially for the reasons stated in its thoughtful and detailed opinions below, the district court's dismissal under Fed.R.Civ.P. 12(b)(6) of ... [the plaintiff's] ... constitutional claims based on [the defendant's] alleged wrongful termination of his employment because, *inter alia*, [the plaintiff] was an at-will employee and [the defendant] was not a state actor with respect to the employment action[.]").

### D. As to the Respondent's Request for Rule 11 Sanctions and Attorneys' Fees

In its reply, the Respondent's ask this Court to sanction the Petitioner pursuant to Fed.R.Civ.P. 11 and award the Respondent attorneys' fees. According to the Respondent, the Petitioner has acted in bad faith in commencing and refusing to withdraw this allegedly frivolous action. The Respondent claims it "went to lengths to avoid" filing its motion to dismiss and to

have "repeatedly asked [the Petitioner] to withdraw his claims against [the Respondent] given its untimeliness ... and stated it would seek sanctions, and exhaustively explained the reasons for its demand," but the Petitioner refused. (Reply, pg. 6.) With its reply papers, the Respondent has included evidence of its attempts to get the Petitioner to withdraw this action.

 Pursuant to the provisions of Fed. R.Civ.P. 11(b), an attorney who presents "a pleading, written motion, or other paper" to the court thereby "certifies" that to the best of his knowledge, information, and belief formed after a reasonable inquiry, the filing is: (1) not presented for any improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) either supported by evidence or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." The purpose of Rule 11 "is to deter baseless filings in district court and ... streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

 In general, "the standard for triggering the award of fees under Rule 11 is objective unreasonableness." *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir.2000). This "standard is appropriate in circumstances where the lawyer whose submission is challenged by motion has the opportunity, afforded by the 'safe harbor' provision, to correct or withdraw the challenged submission." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir.2003). In this regard, Rule 11(c) provides a safe harbor of twenty-one days during which time factual or legal contentions may be withdrawn

or appropriately corrected in order to avoid sanctions. Fed.R.Civ.P. 11(c)(1)(A). "Rule 11 and principles of due process require that 'the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense.'" *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,* 682 F.3d 170, 175 (2d Cir.2012) (quoting *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 334 (2d Cir.1999)). "The safe-harbor provision is a strict procedural requirement." *Id.* "An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21–day safe harbor period." *Id.*

 The Second Circuit has cautioned that Rule 11 sanctions should be "made with restraint," *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 333 (2d Cir.1999), and, even where a court determines that Rule 11(b) has been violated, the decision whether to impose sanctions is not mandatory, but rather is a matter for the court's discretion, *Perez v. Posse Comitatus,* 373 F.3d 321, 325 (2d Cir.2004).

 In this case, "without reaching its merits," the Court declines to consider the Respondent's request for sanctions, because the Respondent "failed to comply with [ ] Rule 11's procedural requirements in moving for sanctions against [the Petitioner]." *Banfield v. UHS Home Attendants, Inc.,* 1997 WL 342422, No. 96 CIV. 4850(JFK), at *3 (S.D.N.Y. June 23, 1997). In this regard, the Respondent "did not file [its] Rule 11 motion as a 'separate motion,'" but instead "included it in [its reply] papers to [the Petitioner's opposition to the motion to dismiss]." *Id.* This is contrary to Rule 11(c)(2), which "mandates that a motion for sanctions must be made

separately from any other motion." *Peters v. Molloy College of Rockville Centre,* No. CV 07–2553(DRH)(ETB), 2010 WL 3170528, at *6 (E.D.N.Y. Aug. 10, 2010) (citation and internal quotation marks and brackets omitted).

Further, the Respondent has also not complied with Rule 11(c)(2)'s safe harbor provision "requir[ing] that, where sanctions are initiated by motion of a party, the motion is to be served on the allegedly offending party twenty-one days before it is filed with the Court." *Id.* (citing Fed. R. Civ. P. 11(c)(1)(A); *Storey v. Cello Holdings, LLC,* 347 F.3d 370, 389 (2d Cir. 2003)). As "[c]ompliance with Rule 11's safe harbor provision is mandatory" and "failure to do so will result in a denial of the sanctions motion," the Respondent's request for attorneys' fees as a sanction against the Respondent pursuant to Fed. R.Civ.P. 11 is denied. *Libaire v. Kaplan,* Civil Action No. 06–1500, 2008 WL 794973, at * 12 (E.D.N.Y. Mar. 24, 2008).

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Respondent's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is granted and the Petition is dismissed in its entirety; and it is further

**ORDERED** that the Respondent's request to impose sanctions on the Petitioner and for an award of attorneys' fees pursuant to Fed.R.Civ.P. 11 is denied; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**