Frank PERERO, et al., Plaintiffs,

v.

HYATT CORPORATION d/b/a
Grand Hyatt New York,
et al., Defendants.

13–cv–7381 (SLT) (RER)

United States District Court,
E.D. New York.

Signed January 20, 2015

Filed January 23, 2015

Jung–Dong Kim, J.D. Kim, Esq., Lake Success, NY, for Plaintiffs.

Caitlin Senff Ladd, Robert Steven Whitman, Seyfarth Shaw LLP, Barry N. Saltzman, Danya Ahmed, Pitta & Giblin LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

TOWNES, United States District Judge

Plaintiffs Frank Perero, Noel McCarthy, Jadwiga Mills, Valin Tin, Gilbert Ramos, Felix Marte, Eric Hoang, Roosevelt Davis, Scott Nollenbergers, Anthony Di Sante, Ivan Steinberg, Paolo Prall, Andres Morante, Michael Worrell, Joseph Fernandez,

and Bess Morrison (collectively, "Plaintiffs") bring this action against their employer—Hyatt Corporation d/b/a Grand Hyatt New York ("Hyatt"), and against their Union(s)—the New York Hotel & Motel Trades Council, AFL–CIO and the Hotel, Restaurant & Club Employees and Bartenders Union, Local 6 (collectively, the "Union"). Plaintiffs, all of whom are employed as "B–List" banquet workers at the Hyatt, allege that the Hyatt and the Union violated various state and federal statutory and common laws by "fail[ing] to treat a category of unionized workers 'B–List Banquet Workers' in the same manner as 'A–List Banquet Workers'." (Compl. ¶ 6.) Currently before the Court are Hyatt's and the Union's motions for judgment on the pleadings brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, the motions are granted and the complaint is dismissed in its entirety.

### Legal Standard

Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Under Rule 12(c), "a party is entitled to judgment on the pleadings only if it has established that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Bailey v. Pataki*, No. 08 Civ. 8563(JSR), 2010 WL 234995, at *1 (S.D.N.Y. Jan. 19, 2010) (quotation marks and citations omitted) (alteration in original).

"The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to [Rule] 12(c) motions for judgment on the pleadings." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir.2010). Thus, the Court applies the Rule 12(b) "plausibility standard," which is guided by "[t]wo working princi-ples." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). District courts should first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. 1937. Because "hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense," district courts should not "grant a motion under Rule 12(c) unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1368 (3d ed.).

In deciding a Rule 12(c) motion, the district court may only consider the facts as presented within the four corners of the complaint. *Sira v. Morton*, 380 F.3d 57, 66–67 (2d Cir.2004). "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, ... documents that, although not incorporated by reference, are 'integral' to the complaint," *id.* (citations omitted), and any facts of which judicial notice may be taken, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002). The Second Circuit has emphasized that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in original). However, documents that are "neither expressly cited in

the complaint nor integral to the claims raised" may not be considered, even if the complaint makes "limited quotation[s] from or reference[s] to" those documents. *Sira*, 380 F.3d at 67 (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989)) (rejecting argument that short quotations from an annual report and 10K statement incorporated those documents into the complaint). "[I]f the motion includes material 'outside the pleadings' and that material is 'not excluded by the court'" the district court must convert the motion to one for summary judgment. *Id.* (quoting Rule 12(c)).

**Factual Background**

The following facts are taken from the complaint and documents relied upon therein. Plaintiffs are employed as banquet workers at Hyatt and are members of the Union. (Compl. ¶ 7.) The Union is the exclusive collective bargaining agent for all Union members employed by Hyatt and has entered into an industry-wide collective bargaining agreement (the "CBA") with the Hotel Association of New York City, of which Hyatt is a member. (Compl. ¶ 10.) Accordingly, the terms and conditions of Plaintiffs' employment at the Hyatt are governed by the CBA. The CBA provides, *inter alia*, that banquet workers will be paid an additional sum for serving tables with 13 or more guests. (Compl. ¶ 12–13 (citing Ex. II, IWA Schedule A–1).) The CBA defines such tables as "splits" and "doubles," depending on the number of guests, and mandates a proportionately higher wage for banquet workers servicing such tables. (*Id.*)

Since 1986, Hyatt has maintained two rosters for banquet workers, an "A–List" and a "B–List." (Compl. ¶ 14.) According to Plaintiffs, there is no difference between "A–List" and "B–List" banquet workers, other than that, because of their seniority, "A–List" banquet workers are called be-fore "B–List" banquet workers to fill jobs. As a result of a 1998 arbitration award in favor of the Union for the benefit of "B–List" banquet workers, (the "1998 Arbitral Ruling"), Hyatt is required to fill open "A–List" jobs from the "'B–List," according to the "B–List" banquet workers' seniority, rather than from other sources. (Compl. ¶ 15 (quoting Ex. III, 1998 Arbitral Ruling).) According to Plaintiffs, the ruling requires Hyatt to treat "B–List" banquet workers "identically" to "A–List" workers in all respects, because the only difference between "A–List" and "B–List" banquet workers is their seniority. (Compl. ¶¶ 15–16.)

Plaintiffs' principal complaint arises out of a memorandum issued by Hyatt on or about April 22, 2013, which provides that "A–List" banquet workers may be called to work "doubles" and "splits" before "B–List" workers, and as a result "B–List" workers only get to work if not enough A-list workers are available." (Compl. ¶ 17.) Plaintiffs contend that this practice violates both Schedule A–1 of the CBA and the 1998 Arbitral Ruling, because, as interpreted by Plaintiffs, the 1998 Arbitral Agreement bars Hyatt from staffing "doubles" and "splits" with "A–List" employees, but rather requires Hyatt to first offer "doubles" and "splits" to "B–List" banquet workers. (Compl. ¶¶ 18–19.) Plaintiffs also contend that the average age of "B–List" banquet workers is 55 years old, and the "change in work rules is constructively discharging Plaintiffs[,] placing them in an untenable position in the twilight of their work lives." (Compl. 48–49.) Finally, Plaintiffs allege that the resultant reduction in their hours prevents the Plaintiffs from, *inter alia*, making contributions into their pension funds. (Compl. ¶ 18.)

Plaintiffs commenced the instant action in New York Supreme Court, Queens County on or about December 17, 2013,

alleging claims against Hyatt and the Union under: (1) state common law theories of breach of contract, breach of the implied covenant of good faith and fair dealing, fraud/tort, and unjust enrichment/detrimental reliance; (2) the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*; (3) federal, state, and municipal age discrimination statutes, namely, the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U.S.C. § 621 *et seq.*, the New York Human Rights Law (NYHRL), N.Y. Exec. Law, § 290 *et seq.*, and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code § 8–101 *et seq.*; and (4) breach of Hyatt's and the Union's "duty of fair representation." (Compl. ¶¶ 20–57.) The Union removed the action to this Court on December 30, 2013 pursuant to 28 U.S.C. §§ 1441 and 1331, on the grounds that this Court has subject matter jurisdiction over the action. (Dkt. 1, Notice of Removal.) Hyatt consented to removal. (Dkt 1, Ex. B, Notice of Consent and Joinder in Removal.)

Currently before the Court are Hyatt's and the Union's motions for judgment on the pleadings brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Both motions argue that the pleadings are insufficient and also submit evidence suggesting that, in any event, Plaintiffs' claims are without merit and are time barred. For the following reasons, without considering any evidence outside the complaint, the Court grants the defendants' motions and dismisses the action in its entirety under Rule 12(c).

## Discussion

As a preliminary matter, Plaintiffs have expressly conceded their state common law claims. (Pls' Br. at 4.) Plaintiffs have also abandoned their ERISA claims and their federal, state, and municipal statuto-ry age discrimination claims by failing to respond to Hyatt's and the Union's motions to dismiss those claims. *McLeod v. Verizon New York, Inc.*, 995 F.Supp.2d 134, 143 (E.D.N.Y.2014) ("[C]ourts in this circuit have held that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute[s] an abandonment of those claims.'") (quoting *Youmans v. Schriro*, No. (PAE)(JCF), 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013)); *see also Apple v. Atl. Yards Dev. Co., LLC*, No. 11–CV–5550 JG, 2014 WL 5450030, at *6 (E.D.N.Y. Oct. 27, 2014). Accordingly, Counts One through Six of the complaint are dismissed.

Plaintiffs do, however, oppose Hyatt's and the Union's motions for judgment on the pleadings as to the Seventh Count in the complaint, which alleges that Hyatt and the Union breached their "duty of fair representation." (Compl. ¶¶ 54–57.) Although not explicitly stated in the complaint, the only plausible reading of Count Seven—which Plaintiffs embrace in their opposition brief—is that Count Seven raises a "hybrid claim" for breach of the CBA under § 301 of the Labor Management Relations Act, ("LMRA"), 29 U.S.C. § 185, and the implied duty of fair representation under the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq. Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 32 (2d Cir.2000). "To establish a hybrid [LMRA] § 301/[duty of fair representation] claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 178–79 (2d Cir.2001); *see also Carrion*, 227 F.3d at 33–34. "The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both." *White*, 237

F.3d at 179; *see also Nicholls v. Brookdale Univ. Hosp. and Med. Ctr.*, 204 Fed.Appx. 40, 42 (2d Cir.2006) (summary order) ("[W]e need not determine whether the [employer] breached the collective bargaining agreement ... because [plaintiff] has failed to establish that the Union breached its duty of fair representation." (alterations omitted)).

Here, Plaintiffs have sued both their employer and union, alleging that Hyatt breached the CBA "[b]y deceptively and unilaterally adopting this work change," and that the Union breached its duty of fair representation by its "actions and inaction ... [in] enforce[ing] the CBA." (Compl. ¶¶ 55–56.) Hyatt moves for judgment on the pleadings on Plaintiffs' hybrid claim on the basis that Plaintiffs have not adequately alleged "any facts to indicate the nature of the breach." (Hyatt's Br. at 8.) Likewise, the Union asserts that Plaintiffs have failed to allege, with the requisite level of specificity, that the Union breached its duty of fair representation. (Union's Br. at 12–16.) Defendants are correct on both counts.

### A. Plaintiffs have failed to adequately plead that Hyatt breached a collective bargaining agreement

In their complaint, Plaintiffs allege that Hyatt breached the CBA on or about April 22, 2013 by changing its policy to give "A-List" banquet workers priority access to wait on atypically large tables, which, pursuant to Schedule A–1 of the CBA, command additional wages. According to the complaint, this policy breaches the collective bargaining agreement by "disregarding [a] longstanding interpr[ation] of the CBA provisions in Schedule A–1 ... regarding covers and splits and working conditions thereby changing scheduling practices affecting Banquet and B List workers [sic][.]" (Compl. ¶ 18.)

Hyatt moves for judgment on the pleadings on the grounds that Plaintiffs have failed to plausibly allege a hybrid claim because Plaintiffs have failed to specify how any of Hyatt's conduct breached an applicable provision of the governing collective bargaining agreement. (Hyatt Br. at 8–9.) In response, Plaintiffs make no attempt to argue that they have met their pleading burden. Instead, they state that: "Ironically, [Hyatt] is arguing in conclusory manner in its current motion that Plaintiffs [have not plausibly pleaded a hybrid claim.] As it[, Hyatt,] fails to specify in what manner Plaintiffs [sic] argument was merely conclusory, their argument should fail." (Pls' Br. at 12.)

■ Plaintiffs misapprehend the allocation of burdens in this matter. While it is true that the movant, in this case Hyatt, bears the burden on a motion under Rule 12(c) of establishing "that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law," *Wireless Ink Corp. v. Facebook, Inc.*, 787 F.Supp.2d 298, 305 (S.D.N.Y.2011) (quotation marks and citations omitted), Rule 8(a)(2) places an initial pleading burden on the plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). Pursuant to Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted); *see also Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Thus,

although "detailed factual allegations" are unnecessary, Plaintiffs' pleadings must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (quotation marks and citation omitted); *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Hyatt argues that Plaintiffs have not given fair notice of their claim. In their opposition, Plaintiffs do not substantively dispute Hyatt's contentions and thus, it appears that they have abandoned their claim against Hyatt. *McLeod*, 995 F.Supp.2d at 143 ("[F]ailure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims.") (citations and quotation marks omitted).

In any event, Plaintiffs have not met their pleading burden, under Rule 8(a)(2), of providing the grounds upon which their claim rests because the complaint does not plausibly plead any breach of a collective bargaining agreement. Plaintiffs' recite that Hyatt's staffing policy breaches Schedule A–1 of the CBA. However, Schedule A–1, the purportedly relevant portion of which is reproduced in the complaint, merely provides a sliding scale for wages for banquet workers waiting on atypically large tables. (Compl. ¶¶ 12–13.) Schedule A–1 is silent as to which employees should be staffed to "doubles" and "splits," and indeed, makes no mention of "A–List" or "B–List" banquet workers. No plausible reading of the CBA requires "B List" workers to be offered "doubles" and "splits" *before* "A–List" workers, who, as Plaintiffs' concede, have more seniority. Plaintiffs do not claim that they worked large tables and were not compensated accordingly; thus, they have not sufficiently pleaded a breach of Schedule A–1. Nor do Plaintiffs plead that the 1998 Arbitral Award somehow

alters Schedule A–1 to require priority treatment for "B–List" banquet workers. The language of the 1998 Arbitral Award, reproduced in the complaint, requires Hyatt to promote "B List" banquet workers to the "A–List," in order of seniority. (Compl. ¶ 15.) But this case does not involve the filling of "A–List" vacancies. Plaintiffs fail to plausibly plead that either the CBA or the 1998 Arbitral Award requires that "B–List" banquet workers receive any priority in access to "doubles" and "splits" over their "A–List" counterparts. Thus, Plaintiffs have not alleged any facts which suggest that Hyatt breached any provisions of the applicable collective bargaining agreement by first offering "doubles" and "splits" to "A–List" banquet workers, (workers with the most seniority), and then offer remaining "doubles" and "splits" to "B–List" banquet workers. Accordingly, Plaintiffs' hybrid claim, the only remaining claim in the complaint, must be dismissed. *See Akers v. Brookdale Univ. Hosp. & Med. Ctr.*, No. CV06–00350(BMC)(VVP), 2006 WL 2355842, at *5 (E.D.N.Y. Aug. 15, 2006) (dismissing hybrid claims against the union upon finding no breach of the collective bargaining agreement by the employer).

### B. Plaintiffs have failed to adequately plead that the Union breached its duty of fair representation.

Even if Hyatt's April 22, 2013 memorandum did breach the CBA, Plaintiffs have also failed to adequately allege that the Union breached its duty of fair representation. Plaintiffs allege, in a conclusory fashion, that the Union breached its duty when it failed to "call a halt [to Hyatt's] change of practice or bring the matter to binding arbitration[,]" (compl. ¶ 19), and "fail[ed] to recognize [Hyatt's] clear breach of contract," (compl. ¶ 56).

[4] To prove that a union has breached its duty of fair representation, the chal-

lenging members must establish two elements. *First,* they must prove that the union's actions or inactions are either 'arbitrary, discriminatory, or in bad faith.' *Second,* the challenging members must demonstrate a causal connection between the union's wrongful conduct and their injuries.

*Vaughn v. Air Line Pilots Ass'n, Int'l,* 604 F.3d 703, 709 (2d Cir.2010) (citations and quotation marks omitted); *see also Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991); *Spellacy v. Airline Pilots Ass'n-Int'l,* 156 F.3d 120, 126 (2d Cir.1998). Judicial review of an alleged breach of a union's duty of fair representation is "highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *O'Neill,* 499 U.S. at 78, 111 S.Ct. 1127.

Thus, to defeat the Union's motion, Plaintiffs must plausibly allege that the Union's actions were arbitrary, discriminatory, or undertaken in bad faith. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *O'Neill,* 499 U.S. at 67, 111 S.Ct. 1127 (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)). "This wide range of reasonableness gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *White,* 237 F.3d at 179 (quoting *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 45–46, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998)). Thus, "[a] union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." *Marquez,* 525 U.S. at 46, 119 S.Ct. 292. "A union's acts are discriminatory when 'substantial evidence' indicates that [the union] engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives." *Vaughn v. Air Line Pilots Ass'n, Int'l,* 604 F.3d 703, 709 (2d Cir.2010) (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am. v. Lockridge,* 403 U.S. 274, 301, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971)). To plead that a union's actions were undertaken in "bad faith", the plaintiff must allege "fraudulent, deceitful, or dishonest action". *White,* 237 F.3d at 179 (quoting *Sim v. N. Y. Mailers' Union* No. 6, 166 F.3d 465, 472 (2d Cir.1999)); *see also Spellacy,* 156 F.3d at 126 ("Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct."). Thus, a breach of the duty of fair representation requires more than "[t]actical errors ... [or] even negligence; ...[a]s long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage." *Barr v. United Parcel Serv., Inc.,* 868 F.2d 36, 43 (2d Cir.1989) (quotation marks and citation omitted).

"In the context of claims that a union failed to file a grievance on a member's behalf, a union 'may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion.'" *Velasquez v. Metro Fuel Oil Corp.,* 12 F.Supp.3d 387, 412 (E.D.N.Y.2014) (quoting *Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). However, a union has "broad discretion in its decision whether and how to pursue an employee's grievance against an employer." *Chauffeurs Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 567–68, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (citing *Vaca,* 386 U.S. at 185, 87 S.Ct. 903); *see also Ayazi v. United Fed'n of Teachers, Local 2,* NO. 99 CV 9222(CLP), 2011 WL 888053, at *15

(E.D.N.Y. Mar. 14, 2011). It is clear that "the duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1153–1154 (2d Cir.1994). "If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery ... would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation." *Vaca,* 386 U.S. at 191, 87 S.Ct. 903.

Plaintiffs state that the Union's decision to not pursue a grievance or otherwise "halt" Hyatt's decision to offer "doubles" and "splits" to banquet workers with the most seniority was arbitrary and discriminatory. Setting aside Plaintiffs' bare legal assertions, the remainder of Plaintiffs' complaint is insufficient to render their claims plausible.

First, Plaintiffs contend that the Union breached it duty by arbitrarily failing to "recognize" Hyatt's breach of the CBA. (Compl. ¶ 56.) However, as explained above, no reasonable reading of the purportedly relevant portion of CBA, which is reproduced in the complaint, supports Plaintiffs' argument. The reproduced portion of the CBA is silent as to the procedures for staffing "doubles" and "splits" and seems to leave this decision to the discretion of Hyatt or the Union. Given that the Plaintiffs have not pleaded that they had a meritorious grievance, the Union's decision not to grieve their complaint cannot be arbitrary. *Cruz,* 34 F.3d at 1154 (explaining that union does not violate its duties by "fail[ing] to process a meritless grievance").

■■■ Second, Plaintiffs plead that the Union's decision benefits one category of union members, namely, more senior "A-List" banquet servers, to the detriment of another category of union members, namely, "B-List" banquet servers, and that this decision was thus arbitrary or discriminatory. (Compl. ¶¶ 18–19, 56.) However, that the decision made by Hyatt and the Union worked to the detriment of "B-List" banquet servers does not render the Union's decision not to file a grievance actionable, because "[a] union's reasoned decision to support the interests of one group of employees over the competing interests of another group does not constitute arbitrary conduct." *Spellacy,* 156 F.3d at 129.

Third, Plaintiffs plead that the average age of "B-List" banquet servers is 55, and thus, they imply that the Union's decision not to grieve the staffing policy constituted discrimination on the basis of age in violation of the Union's duty of fair representation and the ADEA. To the extent that Plaintiffs allege that the Union's decision not to grieve Hyatt's staffing policy constituted discrimination in violation of the Union's duty of fair representation under an age-discrimination theory, a union violates its duty of fair representation when "substantial evidence indicates that [the union] engaged in discrimination that was intentional, severe, and unrelated to legitimate union objectives." *Vaughn,* 604 F.3d at 709 (quotation marks and citations omitted). Here, Plaintiffs do not allege that the Union engaged in intentional or severe discrimination or that it was motivated by animus towards "B-List" servers on account of their age. Nor do they allege that the decisions made by Hyatt and the Union were unrelated to legitimate union objectives. Thus, Plaintiffs do not plead any facts even suggesting that the Union's position was, in any manner, discriminatory for the purposes of the Union's duty of

fair representation. To the extent that Plaintiffs attempt to make out a discrimination claim under the ADEA, they cannot do so because the ADEA, which prohibits discrimination on the basis of age, does not permit plaintiffs to recover money damages from labor organizations. *See Klaper v. Cypress Hills Cemetery*, No. 10–CV–181 1 NGG LB, 2012 WL 959403, at *6 (E.D.N.Y. Mar. 21, 2012) (explaining that unlike Title VII, which prohibits discrimination on the basis of "race, color, religion, sex, or national origin," 42 U.S.C.A. § 2000e-2, "the ADEA does not permit the recovery of monetary damages against a labor organization") (quotation marks and citations omitted). Even if it did, even under the most lenient standard applied to Title VII discrimination claims involving unions, Plaintiffs would still have to show both "that: 1) the union breached its duty of fair representation by allowing an alleged breach by the employer to go unrepaired; and 2) that the union's actions were motivated by discriminatory animus." *Ayazi*, 2011 WL 888053, at * 12 (emphasis added). Here, Plaintiffs make no allegation that the Union's acts were motivated by discriminatory animus.[1]

[11] Plaintiffs contend (in their brief, but not in their complaint) that the Union's failure to immediately respond to an August 2013 written request to the Union constituted "arbitrary" conduct. However, a union does not violate its duty of fair representation by failing to immediately respond to communications from union members. *Thomas v. Little Flower for Rehab. & Nursing*, 793 F.Supp.2d 544, 548 (E.D.N.Y.2011) ("[A]lthough a union has a 'duty to perform some minimal investigation,' 'only an 'egregious disregard for union members' rights constitutes a breach of the union's duty' to investigate.'") (internal citations omitted). Plaintiffs do not allege that the Union made no investigation into their grievance, thus the mere fact that the Union did not promptly respond to Plaintiffs' August 2013 letter is insufficient to state a claim. *See Pinkney v. Progressive Home Health Servs.*, 367 Fed.Appx. 210, 212 (2d Cir.2010) (summary order) (affirming dismissal of complaint where Plaintiff alleged that her union violated its duty of fair representation by not returning her phone calls and declining to arbitrate her grievance.); *Coleman v. City of New York*, No. 99–CV–1 159 JG, 1999 WL 1215570, at *4 (E.D.N.Y. Dec. 7, 1999) (finding that even assuming the union failed to return plaintiffs phone calls, "[t]hese acts of omission ... do not amount to a breach of the duty of fair representation. At most they constitute negligence on the part of the union").

In their opposition brief, Plaintiffs ask this Court to depart from the admittedly "settled law" that mandates deferential review of union decisions "for public policy reasons—namely that union members can end up with a near forfeiture of their rights (both private and under federal law)," and to instead set "a new precedent ... [so that] Plaintiffs in the current case should not have such a total forfeiture as to their remedies." (Pls' Br. at 8.) Even

1. To the extent Plaintiffs attempt to state their claim under a disparate impact discrimination theory, assuming one could be stated, Plaintiffs cannot do so by "simply alleg[ing] that there is a disparate impact on workers." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005). Rather, they must "isolat[e] and identif[y] the specific employment practices that are alleg- edly responsible for any observed statistical disparities." *Id.* (citations omitted); *see also Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 100, 128 S.Ct. 2395, 171 L.Ed.2d 283 (2008). Here, Plaintiffs do not allege any observed statistical disparities. Indeed, although they do state that the average "B–List" banquet server is 55 years old, they do not allege the average age of "A–List" servers.

if this Court could disregard the mandates of the United States Supreme Court, Plaintiffs have offered no persuasive basis for this Court to decline to accord the Union the "wide latitude" that is typically given to unions in recognition of the fact that "negotiators need [such latitude] for the effective performance of their bargaining responsibilities," and "Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union." *O'Neill*, 499 U.S. at 78, 111 S.Ct. 1127 ("Congress envisioned the relationship between the courts and labor unions as similar to that between the courts and the legislature."). Applying well-settled law, Plaintiffs' allegations fall short of alleging the type of conduct which could state a claim for breach of the duty of fair representation, *i.e.*, action that is "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests." *Barr*, 868 F.2d at 43 (quotations omitted); *see also Martino v. Metro N. Commuter R. Co.*, No. 14–0279–CV, 582 Fed.Appx. 27, 29 (2d Cir.2014) (Neither a "tactical error [n]or negligence . . . amounts to a breach of the duty of fair representation."). Accordingly, Plaintiffs allegation that the Union's "actions and inaction" in "failing to recognize this clear breach of contract" and "enforce the provisions of the CBA," is insufficiently pleaded and the complaint is dismissed.[2]

## CONCLUSION

Defendants' Rule 12(c) motion is granted. The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

---

**2.** Additionally, both defendants argue that, even if Plaintiffs' hybrid claim had been adequately alleged, it is time barred by the applicable 6–month statute of limitations. *See Arnold v. 1199 SEIU*, 420 Fed.Appx. 48, 50 (2d Cir.2011) (summary order) ("A hybrid § 301/ fair representation claim is subject to a six-month statute of limitations."). Although not alleged in the complaint, defendants contend (and Plaintiffs do not dispute) that Plaintiff Perero filed a grievance with the Union in March 2007 concerning this issue and did not file this action within six months. This Court need not consider the extrinsic evidence submitted by the defendants in support of their argument that the action accrued in 2007, because Plaintiffs' complaint is dismissed for failure to adequately plead a hybrid claim. The Court notes that it appears from the four corners of Plaintiff's complaint that Plaintiffs' claims would nevertheless be time barred by the applicable 6–month statute of limitations because, as Plaintiffs concede, the complaint was filed more than 6 months after the April 22, 2013 issuance of Hyatt's staffing memorandum.